UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10988-RWZ


PAT STARKEY

v.

MARC BIRRITTERI,
*in his individual capacity*


MEMORANDUM OF DECISION

November 27, 2012

ZOBEL, D.J.

Plaintiff Pat Starkey brings suit against defendant Marc Birritteri, an officer in the Revere Police Department, for violation of his constitutional rights under 42 U.S.C. § 1983 (Count I), and for malicious prosecution under Massachusetts tort law (Count II). Birritteri moves to dismiss Count I for failure to state a claim, and in response Starkey moves to amend his complaint.

I.    **Background**

As appropriate on a motion to dismiss, the facts below are recounted as alleged in the complaint.

On September 29, 2007, officer Daniel Talbot of the Revere Police Department was shot and killed while off duty. Three days later, Derek Lodie was arraigned in connection with Talbot's death. In response, supporters of Derek Lodie put up lawn

signs reading "Free Lodie." The signs were removed by officers of the Revere Police Department as "inflammatory."

On October 8, nine days after the shooting, Revere police officers participated in the city's Columbus Day parade by marching in honor of officer Talbot. Starkey's stepson Michael Picardi attended the parade wearing a t-shirt reading "Free Lodie." Other parade attendees, including several officers, became visibly angry on seeing Picardi's t-shirt. One close friend of officer Talbot's, named William Cianciarusso, lost his temper completely and assaulted Picardi. The police did not intervene.

Starkey was told that Picardi had been hurt and came with his wife to help his stepson. When Starkey arrived, Picardi told him that he had been beaten up for wearing a "Free Lodie" shirt. Starkey responded that people do not get assaulted just for wearing a t-shirt. When Picardi insisted that was the reason for the beating, Starkey told Picardi to give him the shirt. Starkey then put on the "Free Lodie" t-shirt and gave his own shirt to Picardi.

As Starkey, his wife, and Picardi were preparing to leave, Starkey saw Birritteri standing in uniform near a parking lot across the street. He began to cross the street to ask Birritteri if anyone had seen the assault on his stepson. As he headed towards Birritteri, Starkey was suddenly confronted by Cianciarusso, who without warning punched Starkey in the face. Starkey stumbled backwards, and Cianciarusso pulled out a revolver. Starkey, who was carrying a licensed pistol in a shoulder harness under his shirt, told Cianciarusso that he had a weapon but did not want a fight.

Meanwhile, Starkey's wife ran across the street to Birritteri and alerted him that a

man with a gun was assaulting her husband. Birritteri crossed the street, went over to Cianciarusso, and had a brief conversation with him; Cianciarusso brought his revolver down while talking to Birritteri but kept it in his hand. While talking to Birritteri, Cianciarusso pointed at Starkey and said, "Look at his f**king shirt!"

Starkey informed Birritteri that Cianciarusso had assaulted him. Birritteri approached Starkey, grabbed his arm, and pulled it. That motion caused both Birritteri and Starkey to spin around, and they tripped over a curb and fell down together. Birritteri quickly got up, drew his service firearm, aimed it at Starkey, and told him to put his hands up. As Starkey complied, Cianciarusso came over and kicked him several times in the head and face; Birritteri did not intervene. Birritteri then told Cianciarusso to move over so he could handcuff Starkey. After Starkey was handcuffed and lying on his stomach on the sidewalk, Cianciarusso kicked him again, and again Birritteri did not intervene.

Other Revere police officers arrived at about this time, and one of them ripped off Starkey's "Free Lodie" shirt. Another officer cut off the holster Starkey was wearing and confiscated the pistol. Starkey was arrested and taken to the Revere police station, where Birritteri caused a criminal complaint to issue charging him with assault with a dangerous weapon, assault and battery on a police officer, resisting arrest, and disorderly conduct. Cianciarusso was not arrested or charged with any crimes.

Starkey was prosecuted based on false information provided by Birritteri. After a trial on October 18, 2011, Starkey was acquitted on all charges.

## II.    Legal Standard

3

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must allege sufficient facts to make the plaintiff's claim plausible. Id.

The court "should freely grant leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). That standard allows amendment "unless the amendment would be futile or reward undue delay." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009).

## III.    Analysis

Birritteri moves to dismiss the first count of Starkey's complaint which proceeds under 42 U.S.C. § 1983. According to Birritteri, any § 1983 claim based on the events described above is untimely, fails to state a constitutional violation, or is barred by qualified immunity.

### A.    Timeliness

Section 1983 does not have its own limitations period; instead, it borrows the forum state's general statute of limitations for personal injury claims. Owens v. Okure, 488 U.S. 235, 249-50 (1989). In Massachusetts, the limitations period is three years. Mass. Gen. Laws ch. 260, § 2A; Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Starkey's arrest occurred on October 8, 2007, and he was arraigned and released on

4

$40 bail within two days.[1] As Starkey concedes, any § 1983 claim for false arrest,

retaliatory arrest, or false imprisonment accrued when he was arraigned and released.

Wallace v. Kato, 549 U.S. 384, 387-92 (2007); Harrington v. City of Nashua, 610 F.3d

24, 28-30 (1st Cir. 2010). Because those events occurred more than three years before

this suit was filed, such claims are time-barred.

Recognizing that claims based on his arrest would be untimely, Starkey explains

that his § 1983 claims are based on his subsequent prosecution. Because "a cause of

action for malicious prosecution does not accrue until the criminal proceedings have

terminated in the plaintiff's favor," Heck v. Humphrey, 512 U.S. 477 (1994), Starkey

could not prove a malicious prosecution violating his constitutional rights until he was

acquitted on October 18, 2011. Therefore, if Starkey has a § 1983 claim for malicious

prosecution violating his constitutional rights, that claim is timely.

**B. Qualified Immunity**

Starkey asserts that Birritteri's malicious prosecution violated his First, Second,

and Fourth Amendment rights.[2] Birritteri responds that the allegedly malicious

prosecution did not violate Starkey's constitutional rights, and that in any case Birritteri

---

[1] Starkey's release on bail is not alleged in the complaint, but is reflected in the police booking report submitted by Birritteri. That document is a public record and Starkey does not challenge its authenticity. Therefore, the court may consider it on this motion to dismiss. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

[2] Starkey's Second Amendment argument depends on new allegations in his proposed amended complaint. Because deciding whether to grant leave to amend depends on whether amendment would be futile, Abraham, 553 F.3d at 117, the court will consider the merits of Starkey's Second Amendment argument here in light of Birritteri's assertion of qualified immunity.

is protected by qualified immunity.

The qualified immunity inquiry is a two-part test. "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). Regarding the second prong of the test, the "dispositive inquiry" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)). That determination looks to both the contours of the allegedly infringed right and the particular facts of the case. Id. The court may consider the two prongs of the qualified immunity test in either order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### 1. First Amendment

At first glance, Starkey's allegations appear to state a claim for retaliatory prosecution: that is, a claim that Birritteri subjected Starkey to prosecution in order to punish Starkey for wearing the "Free Lodie" t-shirt. However, Starkey explicitly disclaims that theory of liability in his opposition. He argues instead that Birritteri's actions violated the First Amendment because the malicious prosecution was intended to discourage Starkey from future speech. Starkey compares his case to Awabdy v. City of Adelanto, 368 F.3d 1062 (9th Cir. 2004), in which the Ninth Circuit found that a city councilman stated a violation of his First Amendment rights by claiming that he was maliciously prosecuted in order to discourage his re-election campaign. Id. at 1069-72.

Starkey's allegations meet both parts of the qualified immunity inquiry. First, he

has plausibly alleged a violation of his First Amendment rights. Government action "designed or intended to suppress or restrict the expression of specific speakers contradict[s] basic First Amendment principles." United States v. Playboy Entm't Grp., 529 U.S. 803, 812 (2000). Starkey has alleged that Birritteri subjected him to an unfounded prosecution solely in order to suppress his future speech; those factual allegations support finding a First Amendment violation. Second, the right in question was clearly established when Birritteri acted. See id.; cf. Hartman v. Moore, 547 U.S. 250, 256 (2006) (finding the law "settled" that retaliatory prosecution violates the First Amendment). Under the facts as alleged by Starkey, no reasonable officer in Birritteri's position could have believed that prosecuting Starkey to chill his speech would comply with the First Amendment.

Birritteri cites several circuit cases in which retaliatory prosecution claims were dismissed as time-barred because the filing of criminal charges occurred outside the limitations period, and the plaintiffs had not alleged subsequent retaliatory acts within the limitations period that could be construed as part of a continuing violation. See Mata v. Anderson, 635 F.3d 1250, 1252-53 (10th Cir. 2011); Evans v. City of Chicago, 434 F.3d 916, 934-35 (7th Cir. 2006). In this case, however, Starkey has alleged that Birritteri remained involved in the investigation of Starkey and continued to provide false information and false testimony, thereby prolonging Starkey's prosecution. Further factual development will determine whether Birritteri's actions within the limitations period can sustain Starkey's First Amendment claim or can establish a single continuing violation. For now, it is enough that Starkey has plausibly alleged that

7

Birritteri maliciously advanced the prosecution in order to suppress Starkey's speech, thereby violating his clearly established First Amendment rights.

### 2. Fourth Amendment

Starkey alleges that Birritteri violated his Fourth Amendment rights by maliciously prosecuting him. This claim can be efficiently dismissed on the second prong of the qualified immunity inquiry. The court need not determine whether Birritteri's actions in fact violated Starkey's Fourth Amendment rights because any such right was not clearly established.

"It remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment . . . ." Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010). Even assuming that a malicious prosecution can violate the Fourth Amendment, it can only do so where there is "a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure." Id.; see Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001). Standard conditions of pretrial release do not satisfy this requirement; instead, the plaintiff must show some exceptional and significant deprivation. Harrington, 610 F.3d at 24 (citing post-arraignment detention, travel restrictions, or a pecuniary bond as possible examples of significant deprivations).

Here, the booking report indicates that Starkey was released on a $40 bond at his arraignment. In addition, Starkey notes that his firearm, holster, magazines, ammunition, and the 'Free Lodie' t-shirt were all seized while his criminal case was pending, and his license to carry a firearm was suspended. The firearm, magazines,

8

and ammunition were never returned, as they have apparently gone missing.

The court need not determine whether these restrictions in fact constituted a "deprivation of liberty" that violated Starkey's Fourth Amendment rights, because it is abundantly clear that any such violation was not clearly established. The First Circuit has never found a Fourth Amendment violation on these or analogous facts, and other circuits have diverged in similar cases based on the facts before them. See, e.g., Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004) (finding no cognizable deprivation of liberty where plaintiff was forced to post a $1,000 bond and to travel twice from New Jersey to Florida); Britton v. Maloney, 196 F.3d 24 (1st Cir. 1999) (finding no cognizable deprivation of liberty although police detained plaintiff's rifle); Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998) (finding cognizable deprivation of liberty where plaintiff was required to post a $10,000 bond and to refrain from traveling outside New Jersey and Pennsylvania); Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) (finding cognizable deprivation of liberty where plaintiff was required to refrain from traveling outside New York). Because a reasonable officer in Birritteri's position could not have known that the restraints to which his malicious prosecution subjected Starkey would violate Starkey's Fourth Amendment rights, Birritteri is entitled to qualified immunity on this aspect of Starkey's § 1983 claim.

### 3. Second Amendment

The same analysis applies with even greater force to Starkey's Second Amendment argument. Starkey claims that the malicious prosecution deprived him of his Second Amendment rights because his firearm, magazines, ammunition, and

holster were seized and his license to carry a firearm was suspended while the criminal case was pending. He also notes that the firearm, magazines, and ammunition went missing and were never restored. However, Starkey cites no authority to show it was clearly established law that Birritteri would violate his Second Amendment rights by subjecting him to a malicious prosecution that incidentally deprived him of his right to carry a firearm. The only case Starkey cites in this section of his brief is <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), which does not have an obvious application to the facts of this case. The court's own research has also found no relevant law supporting Starkey's position. Indeed, the only First Circuit malicious prosecution case involving detention of a rifle found no constitutional violation. <u>See</u> <u>Britton v. Maloney</u>, 196 F.3d 24. Because a reasonable officer in Birritteri's position would not know he was violating Starkey's Second Amendment rights, Birritteri is entitled to qualified immunity on this aspect of Starkey's claim.

### C. Motion to Amend

Starkey has submitted a proposed amended complaint that adds more specific allegations about Birritteri's motives and also provides allegations underlying his Second Amendment argument. His proposed amendments are not entirely futile and so will be allowed. However, for the reasons given above, Starkey's § 1983 count can only proceed on the theory that Birritteri violated his First Amendment rights by maliciously prosecuting him in order to suppress his speech. His amended § 1983 count will therefore be construed as limited to that alleged constitutional violation.

### IV. Conclusion

Birritteri's partial motion to dismiss (Docket # 8) is DENIED. Starkey's motion to amend his complaint (Docket # 13) is ALLOWED, but his claim under § 1983 shall be construed to rest solely on the ground that Birritteri violated his First Amendment rights by maliciously prosecuting him in order to suppress his future speech.

 

 

     November 27, 2012                                       /s/Rya W. Zobel

              DATE                                       RYA W. ZOBEL
                                           UNITED STATES DISTRICT JUDGE